SAUSA: Daniel Roque

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | 25 MAG 3004 |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAJESTINE FOSTER,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of<br>18 U.S.C. §§ 922(g)(1), 924(c), and 2<br>21 U.S.C. §§ 812 and 841<br><br>COUNTY OF OFFENSE: BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

    CHRISTOPHER VICKERY, being duly sworn, deposes and says that he is a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosive ("ATF"), and charges as follows:

### COUNT ONE
### (Possession of a Firearm After a Felony Conviction)

    1.    On or about May 15, 2025, in the Southern District of New York and elsewhere, MAJESTINE FOSTER, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a Ruger 380 caliber pistol, serial number 371782932 (the "Firearm"), and the Firearm was in and affecting commerce.

    (Title 18, United States Code, Sections 922(g)(1) and 2.)

### COUNT TWO
### (Possession with Intent to Distribute Narcotics)

    2.    On or about May 15, 2025, in the Southern District of New York and elsewhere, MAJESTINE FOSTER, the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3.    The controlled substance involved in the offense was a quantity of mixtures and substances containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(C).

    (Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(C).)

## COUNT THREE
### (Firearm Use, Carrying, and Possession)

4. On or about May 15, 2025, in the Southern District of New York and elsewhere, MAJESTINE FOSTER, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the drug trafficking crime charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5. I am a Task Force Officer assigned to ATF and have been involved in the investigation of this matter. I base this affidavit on my own personal experience investigating crimes involving firearms; my conversations with other law enforcement personnel; my review of interview notes; and my examination of various reports, recordings, photographs, records, and videos. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. Based on my review of records from the United States Probation Office (the "Probation Office"), my examination of criminal history records and records maintained by the New York City Police Department ("NYPD"), and my conversations with certain members of the Probation Office, I have learned, in substance and in part, the following about MAJESTINE FOSTER, the defendant:

   a. On or about April 1, 2014, FOSTER was convicted in the U.S. District Court for the Southern District of New York of (i) conspiracy to distribute and possess with intent to distribute crack and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and (ii) using and possessing firearms during and in relation to a drug conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A), for which he was sentenced to 96 months' imprisonment and three years' supervised release.

   b. On or about November 25, 2020, FOSTER completed his term of imprisonment and was placed on supervised release.

   c. On or about April 16, 2021, FOSTER admitted to failing to notify the Probation Office within 72 hours of being questioned by a law enforcement officer, in violation of a condition of his supervised release. For this violation, on or about May 20, 2021, FOSTER was sentenced to two months' imprisonment and an additional three years' supervised release.

   d. On or about December 18, 2023, FOSTER admitted to assaulting another individual, in violation of a condition of his supervised release, and was sentenced to time served and an additional two years' supervised release. A standard condition of FOSTER's new term of supervised release ordered FOSTER to "permit a probation officer to visit him . . . at any time at home or elsewhere and . . . permit confiscation of any contraband observed in plain view of the

probation officer." A special condition of FOSTER's supervised release ordered (i) FOSTER to "submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the Probation Officer has reasonable belief that contraband or evidence of a violation of the conditions of the defendant's release may be found" and (ii) the Probation Officer to conduct the search "at a reasonable time and in a reasonable manner."

   e. On or about October 1, 2024, during a random routine visit of FOSTER's residence in the Bronx, New York (the "Residence") pursuant to the terms of FOSTER's supervised release, Probation Officer-1 and -2 observed in plain view drug paraphernalia, including scales and empty capsules.

   f. On or about May 15, 2025, FOSTER permitted Probation Officer-1 and -3 to conduct a random, home visit of the Residence, where FOSTER lived alone. Probation Officer-1 and -3 observed in plain view what appeared to be crack cocaine.

   g. On or about May 15, 2025, based on Probation Officer-1 and 3's observations, as described above, and the conditions of FOSTER's supervised release, Probation Officer-1 and -3 searched the Residence and found in FOSTER's bedroom:

    i. the Firearm concealed in the headboard of FOSTER's bed;

    ii. materials for manufacturing and distributing narcotics, including scales, capsules, baggies, razor blades, a pipe, and packaging materials; and

    iii. additional white rock-like powdery substance, alleged crack cocaine. The substance was later tested at the NYPD Controlled Substances Analysis Section (the "NYPD Laboratory") and, based on my review of reports from the NYPD Laboratory, I have learned that the substance consists of approximately 35.469 grams, samples of which tested positive for the presence of cocaine base.

   h. On or about May 15, 2025, the NYPD arrested FOSTER for his possession of the Firearm and narcotics, in violation of New York Penal Law Sections 220.16, Criminal Possession of a Controlled Substance in the Third Degree; 265.03, Criminal Possession of a Weapon in the Second Degree; and 220.03, Criminal Possession of a Controlled Substance in the Seventh Degree.

  7. On or about May 15, 2025, the NYPD conducted a post-arrest interview of MAJESTINE FOSTER, the defendant. Based on my review of a video and audio recording of the NYPD's post-arrest interview of FOSTER, I have learned that during that interview, FOSTER indicated, in substance and in part, that he had a gun in his house, which he described as being a .380 caliber gun, the same caliber as the Firearm.[1] FOSTER also admitted to selling drugs for over a year and indicated that he had about 30 grams of a narcotic in the Residence.

---

[1] Based on my review of the recorded post-arrest interview, I have learned that the NYPD officers spoke with FOSTER for approximately eight minutes and then advised FOSTER of his *Miranda* rights, which FOSTER waived. When FOSTER was asked by the NYPD officers whether he wanted to proceed with the interview, FOSTER mumbled an answer in response. FOSTER,

8.      Based on my review of criminal history reports for MAJESTINE FOSTER, the defendant, and my involvement in this investigation, I have learned the following, in substance and in part:

      a.      On or about December 13, 2011, in Westchester County Court, FOSTER was convicted of (i) Criminal Possession of Marijuana in the Second Degree, in violation of New York Penal Law Section 221.24, a class D felony, and (ii) Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law Section 265.02, for which FOSTER was sentenced to one year of imprisonment.

      b.      As noted above (*see supra* ¶ 6(a)), on or about April 1, 2014, in the U.S. District Court for the Southern District of New York, FOSTER was convicted of (i) conspiracy to distribute and possess with intent to distribute crack and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), and (ii) using and possessing firearms during and in relation to a drug conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A), for which he was sentenced to 96 months' imprisonment and three years' supervised release.

9.      I have communicated with a Special Agent with ATF who is familiar with the manufacturing of firearms and who confirmed that the Firearm was manufactured outside of the State of New York.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of MAJESTINE FOSTER, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s Christopher Vickery, by the Court with permission
_____
CHRISTOPHER VICKERY
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosive

Sworn to before me by reliable electronic
Means (telephone) this 19th day of September, 2025.

_____
THE HONORABLE ROBYN F. TARNOFSKY
United States Magistrate Judge
Southern District of New York

---

however, then proceeded to answer the NYPD officers' questions, including by making the statements described above.